UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN ROHN,

       Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:14-cv-288

## OPINION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income under Titles II and XVI of the Social Security Act. On June 13, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #11-12). Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 30 years of age on his alleged disability onset date. (Tr. 168). He possesses a ninth grade education and previously worked as a grinder and muffler installer. (Tr. 20-21, 32). Plaintiff applied for benefits on January 10, 2011, alleging that he had been disabled since September 15, 2005, due to depression, ADHD, oppositional defiant behaviors, low adaptive functioning, and low blood sugar. (Tr. 168-81, 204). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 68-167). On September 11, 2012, Plaintiff appeared before ALJ James Kent with testimony being offered by Plaintiff, Plaintiff's wife, and a vocational expert. (Tr. 27-67). In a written decision dated September 27, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 11-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2010. (Tr. 13); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

On March 19, 2008, Plaintiff participated in a stress echocardiogram examination the results of which were "negative." (Tr. 275). On April 3, 2008, Plaintiff participated in a bilateral lower extremity arterial Doppler evaluation the results of which were "normal...both at rest and after exercise." (Tr. 294). X-rays of Plaintiff's right ankle, taken June 10, 2009, revealed "soft tissue swelling laterally without fracture or dislocation." (Tr. 291). X-rays of Plaintiff's right foot, taken the same day, were "normal." (Tr. 291).

On March 15, 2011, Plaintiff participated in a consultive examination conducted by Janette Caputo, Ph.D. (Tr. 315-20). Plaintiff reported that he was "applying for disability based on ADD, ADHD, depression and there was something else on the paper but I don't remember what it was." (Tr. 315). Plaintiff complained that he was overweight, but noted that "his weight is less in the summer." (Tr. 316). Specifically, Plaintiff reported that, "[i]n the summertime my wife takes me to the races and I race and I walk a little and the weight comes off." (Tr. 316). Plaintiff indicated that he was referring to "stock car races" and that he has "been racing until this year." (Tr. 316). Plaintiff reported that he only stopped racing because he "can't afford the gas." (Tr. 316).

When asked "what he does with most of his time," Plaintiff responded that he watches television, visits with his dad, and plays computer games. (Tr. 317). Plaintiff also reported that he "likes to race." (Tr. 317). The doctor observed that Plaintiff "behaved with active impatience although he cooperated fully with the questions." (Tr. 317). The doctor also observed that Plaintiff "was mildly distractible and moderately to severely impulsive." (Tr. 317). Plaintiff exhibited "fragile" self-esteem, but the results of a mental status examination were otherwise unremarkable. (Tr. 318-19). Plaintiff was diagnosed with: (1) major depressive episode, severe without psychotic

features, and (2) attention deficit/hyperactivity disorder, predominantly hyperactive-impulsive type. (Tr. 319-20). Plaintiff's GAF score was rated as 53.[1] (Tr. 320). Dr. Caputo reported that Plaintiff's "prognosis is good with appropriate treatment." (Tr. 320). The doctor concluded with the following:

> Based on my examination of claimant today, in my opinion he is able to understand, retain, and implement simple and moderately complex instructions. He is able to acquire new learning at a level that would serve for semi-skilled employment. He has sufficient attention skills to complete work tasks. However, his impulsivity may be too great to allow him to effectively use these resources. His social competence is limited and he has a pattern of quitting jobs impulsively or flying off the handle easily. He has egocentric safety awareness. His medical condition and depression are limiting factors for potential employment, although satisfactory employment is also likely to be therapeutic for him, over time.

(Tr. 320).

At the administrative hearing, Plaintiff testified that he was unable to work because he experiences difficulty following directions and forgets things. (Tr. 37-38). Plaintiff also reported that other people bother him. (Tr. 39-40). Plaintiff testified that he currently participates in auto racing. (Tr. 44-45). When asked what he does during the day, Plaintiff responded:

> Run back and forth between working on the car and I go home and eat lunch, and play on the computer for a few minutes, then I watch TV for a little bit, then I go back to my mom and dad's, then I go out and mess around in my garage, and that's about it.

(Tr. 46).

Plaintiff's wife also testified at the administrative hearing. She reported that Plaintiff "never finishes things" and needs to be reminded to give their children their medication. (Tr. 56).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 53 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

Plaintiff's wife testified that she has known Plaintiff since he was 17 and that "he's the same" now as when she met him. (Tr. 57-58). With respect to Plaintiff's work history, Plaintiff's wife reported that Plaintiff "was working all these other jobs, and he would get like, you know, his first paycheck, whatever, and then he would go back to work, and he would just walk off, and it was no big deal to him. (Tr. 60). With respect to this behavior, Plaintiff's wife stated that Plaintiff "would just say, I'll go find something different." (Tr. 60).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders,

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

6

and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from depression and attention deficit hyperactivity disorder (ADHD), severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 13-16). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he cannot engage in prolonged ambulation; (2) he is limited to simple, routine, and repetitive tasks; and (3) he can have only occasional interaction with the public and co-workers. (Tr. 16).

The ALJ found that Plaintiff could not perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y*

7

*of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here as the ALJ questioned a vocational expert.

The vocational expert asserted that there existed in the state of Michigan at least 16,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 62-64). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **The ALJ Properly Discounted Plaintiff's Subjective Allegations**

Plaintiff testified at the administrative hearing that he was unable to work because he experiences difficulty following directions, forgets things, and because people bother him. Plaintiff argues that he is entitled to relief because the ALJ improperly rejected his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's

"statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t

9

is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

In assessing Plaintiff's credibility, the ALJ examined the meager evidence of record in this matter. As the ALJ observed, Plaintiff's various reported activities, including race car driving and automobile repair, are simply inconsistent with his allegations of disability. (Tr. 17). The ALJ also noted that Plaintiff stopped working not because of his alleged disability, but because the company for which he then worked "went to Mexico." (Tr. 17, 204-05). The ALJ noted that the medical record did not support Plaintiff's subjective allegations. (Tr. 17-18). Finally, the ALJ observed that Plaintiff's wife testified that Plaintiff was "the same" at the present as when she met him more than 15 years previously. (Tr. 18). Accordingly, the ALJ concluded, "[t]he fact that [Plaintiff's] impairments did not prevent [Plaintiff] from working at that time strongly suggests that it would not currently prevent work." (Tr. 18). In sum, the ALJ's decision to discount Plaintiff's subjective allegations complies with the aforementioned legal standard and is supported by substantial evidence.

**II.**       **The ALJ Properly Evaluated the Lay Witness Evidence**

Plaintiff next asserts that the ALJ failed to properly evaluate certain lay evidence. Specifically, Plaintiff argues that the ALJ failed "to give appropriate credit" to his wife's administrative hearing testimony. Plaintiff also alleges that the ALJ failed to accord appropriate weight to a "letter from Plaintiff's former teacher."

The ALJ recognized and discussed the testimony provided by Plaintiff's wife. (Tr. 18). As discussed above, the ALJ specifically referenced such in his assessment of Plaintiff's credibility. Moreover, to the extent that Plaintiff's wife suggested that Plaintiff was limited to an extent beyond that recognized by the ALJ, such testimony was properly rejected for the reasons articulated in the preceding section. Thus, the Court discerns no error in the ALJ's evaluation of the testimony provided by Plaintiff's wife.

Plaintiff also faults the ALJ for failing to give "any weight" to a December 21, 2011 letter written by Brian Turkett, one of Plaintiff's former teachers. (Tr. 267). In this letter, Turkett states that Plaintiff "struggled in some areas but did quite well in others." (Tr. 267). Burkett also noted that Plaintiff "had many disciplinary issues" as a student. (Tr. 267). There is nothing in this particular letter that is inconsistent with the ALJ's RFC determination. Thus, the Court discerns no error in the ALJ's treatment of such. *See Maloney v. Commissioner of Social Security*, 480 Fed. Appx. 804, 810 (6th Cir., May 15, 2012) (while the ALJ is generally required to comment upon lay witness testimony, the failure to do so is harmless unless a reasonable ALJ "could have reached a different disability determination *based on* [the lay witness] testimony"). Accordingly, this argument is rejected.

**III.**	**The ALJ Properly Relied on the Testimony of a Vocational Expert**

Finally, Plaintiff argues that the ALJ's finding at Step V of the sequential evaluation process is flawed because such was premised upon the response by the vocational expert to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed at least 16,000 such jobs in the state of Michigan. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  February 10, 2015		/s/ Ellen S. Carmody
					ELLEN S. CARMODY
					United States Magistrate Judge